IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| NICHOLAS PRICE, | ) | |
|     Plaintiff, | ) | Civil Case No. 5:23-cv-00010 |
| v. | ) | |
| | ) | |
| PHILLIP WHITE, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Nicholas Price, a former Virginia inmate, brought this civil rights action by and through counsel, naming eight defendants. His complaint asserts civil rights claims, pursuant to 42 U.S.C. § 1983,[1] based on events that occurred while he was housed at Augusta Correctional Center (ACC). Specifically, he asserts claims of deliberate indifference (and one against a prison physician of "supervisory liability") arising from defendants' alleged failure to provide adequate medical treatment after he sustained significant knee injuries playing basketball.

Pending before the court are three motions to dismiss.[2] The first was brought by defendants Phillip White (the ACC Warden), and Officers Crookshanks and Williams. (Dkt. No. 31.) The second was brought by defendant Officer B. Mick, misspelled as "Officer Myck" in the complaint. (Dkt. No. 40.) The third motion to dismiss, (Dkt. No. 49), was brought on behalf of an individual named Ronald Mick, who also was served with a copy of the complaint.[3] R. Mick

---

[1] The complaint states in its introduction that it is asserting claims under "Virginia law," but the complaint does not contain or refer to any state-law claims.

[2] The four defendants who have not moved to dismiss were all medical personnel at ACC at the relevant time. Three of them—defendants V. Damen, Derinda Dameron, and Kyle Smith—are represented by separate counsel and have filed an answer to the complaint (Dkt. No. 56). The final defendant, Nurse Sarah Harlow, was served on July 5, 2023, (Dkt. No. 26), but she has not entered an appearance in the case or otherwise responded to the complaint.

[3] Despite the fact that the allegations in the complaint identified only one officer named "Myck," plaintiff served both B. Mick and R. Mick.

was employed at ACC as an educational/media training instructor until March 15, 2021, shortly after Price sustained his injuries.

Price filed a combined response to the first two motions, and defendants have filed a reply.[4]  In Price's response, he concedes that defendant White should be dismissed, and so the court will dismiss Warden White from this action.  It appears that Price has not opposed R. Mick's motion, *see supra* note 3, and the time for doing so has passed.  Based on this failure, the motion is unopposed, which the court takes as an acknowledgement that R. Mick is not the defendant Price intended by his designation to "Officer Myck."  The court will therefore dismiss R. Mick without prejudice.  In the event that Price believes R. Mick is a proper defendant, he may seek leave to amend to rename him as a defendant through an amended pleading.  The court will direct the Clerk to update the docket to reflect the correct spelling of the defendant named "Officer Myck" to Officer B. Mick.  Lastly, for the reasons set forth herein, the court will grant both remaining motions to dismiss and dismiss the claims against the three officers without prejudice.

## I.  BACKGROUND

In setting forth the allegations in Price's complaint, the court discusses them in some detail.  It notes, however, that there are few specific allegations against the moving defendants—Williams, Crookshanks, and B. Mick.  The facts as set forth below are taken from Price's complaint.

On March 6, 2021, at about 2:50 p.m., Price injured himself while playing basketball at ACC.  Landing wrong on his left knee, both of Price's "knees popped" immediately, and he fell

---

[4] Price's response states that it is a response to the motions at Dkt. Nos. 32 and 41.  Those docket numbers are the supporting memoranda for the first two motions to dismiss.

to the ground.  (Compl. ¶¶ 11–13, Dkt. No. 1.)  Price observed that both knees were "severely swollen," and he felt as if he had been kicked in each knee.  (*Id.* ¶14.)  Additionally, his kneecaps were about three inches above their normal position, towards his quadriceps.  (*Id.* ¶ 20.)  He experienced such excruciating pain that he thought he might vomit or lose consciousness.  (*Id.* ¶ 14.)  He would later learn that the patella bones on each knee were fractured and the patellar tendons on both sides had ruptured.

One officer who was present, Officer Perry, told Price he had experienced the same injury before and thought it was probably a snapped patellar tendon.  (*Id.* ¶ 16.)  Perry called the injury in to the medical department as a serious possible compound fracture.  (*Id.*)  Defendant Harlow, Lieutenant Scott, and another officer brought a stretcher to the basketball court, but despite officers' attempts, they could not get him on the stretcher because of Price's size (at the time, he was approximately 6'3" and 252 pounds) and because his legs were locked straight.  (*Id.* ¶¶ 18–20.)  Instead, Price was instructed to walk to medical, with assistance from inmates.  (*Id.* ¶ 20.)

Once Price was in medical, Nurse Harlow gave him ibuprofen and crutches and placed ice on his legs, but she would not let him take the ice back to his bunk.  (*Id.* ¶¶ 22–24.)  "Harlow took zero steps to start the process" of getting him to an off-site medical center such as a hospital, or to start the process for getting an x-ray.  (*Id.* ¶¶ 25–27.)

That night, Price struggled to move around and complete basic tasks.  He had to get help to use the bathroom and could not stand up long enough to take a shower, nor could he get to pill call.  Instead, his knees turned purple and swelled more.  (*Id.* ¶¶ 31–32.)  Non-defendant Officer Wilbarger, who was doing rounds around 5:30 p.m. on March 7, 2021, looked at his knees.  Wilbarger told Price the injury looked serious and that it could be "pretty bad" if he did not get

seen by medical personnel. (*Id.* ¶¶ 33–35.)

Price thus submitted an emergency grievance to obtain medical attention at 6:07 p.m. on March 7. It stated, "My knees are in excruciating pain, I can't bend both my knees and my kneecaps are dislocated and swollen. I need to go to the hospital." (*Id.* ¶ 36.) Nurse V. Damen responded at approximately 6:25 p.m. (*Id.* ¶¶ 37–38.) She categorized his request as non-emergency, replied that he had been given crutches and ibuprofen, and informed him that he had a follow-up appointment on Monday, March 8. (*Id.*)

Price also states that unnamed staff required him to stand for counts even though he could not bend his legs properly to stand up and sit down and they knew of his injury. (*Id.* ¶ 41–43.) The complaint's first mention of defendants Williams, Mick, and Crookshanks occurs at paragraph 44. There, Price alleges that he repeatedly asked these defendants to take him to medical and they all refused to take him to medical or even begin the process for him to be taken to medical. (Compl. ¶ 44.)

Officer Wilbarger advised Price that the only way something would be done about his legs would be if Price refused to return to his cell. Price decided Officer Wilbarger was probably right, so he waited outside his cell door and refused to lock down at 11:30 p.m. until he was seen by medical staff. Rather than taking him to medical, though, unnamed officers told him he was wanted in the watch office for refusing to lock down. They then made him walk to a sallyport where he was left to wait for hours until officers told him to go to the watch office. To get there, he was required to walk up steps, and the two officers who were escorting him offered no assistance. (*Id.* ¶¶ 45–49.) Unnamed prison staff in the watch office saw his legs, but refused his request to be taken to the hospital. Instead, he was forced to walk back to his cell, again unassisted. (*Id.* ¶¶ 50–52.)

The following day, Sunday, March 7, 2021, Price submitted another emergency grievance, but again was told his request was not an emergency. (*Id.* ¶¶ 53–57.)

On Monday, March 8, Price learned that his appointment was being pushed back a day, to Tuesday March 9. When he tried to walk himself to the medical unit, he was initially turned back. He "eventually" was permitted to be escorted to medical and was assigned to the medical unit by Head Nurse Dameron, who also ordered x-rays of his knees. At that point, he was given a walker and a bed pan. The x-rays were taken on March 9, 2021. (*Id.* ¶¶ 58–60.)

On March 8, Nicholas was called to the security booth by Officer Mick and made to walk there by prison staff. Mick told Price that he and Crookshanks did not want to be held liable for Price's injuries. (*Id.* ¶¶ 61.) Price was also directed to go to the entryway to speak with Sgt. Williams, who "reiterated that they did not want to be held liable for [Price's] knee injuries." (*Id.*)

Price also complains about his treatment by Dr. Smith, who forced Price to walk to have his x-rays taken, delayed telling Price of the results, and "demean[ed] Price for requesting further treatment." (*Id.* at 21 (summarizing paragraphs 62–70); *id.* ¶¶ 62–70.) Price was finally taken by ambulance to the emergency room of a local hospital on Saturday, March 13. He was admitted, and, after additional testing, he underwent a double knee surgery on March 16. (*Id.* ¶¶ 71–75.) Price further alleges that once he was discharged and sent back to ACC, he continued to receive inadequate medical care in numerous ways, resulting in additional injuries to his back. (*Id.* ¶¶ 76–91.) None of these allegations refer to the moving defendants.

The complaint lists four counts. The first in a claim under § 1983 alleging deliberate indifference to Price's serious medical needs. The court states that it is "against all Defendants Warden White, Dr. Smith, Nurse Dameron, and Nurse Harlow." (*Id.* at 27 (description of Count

I).) Within Count I itself, Price refers generically to "all defendants" and repeatedly to "defendants," but he does not identify any specific actions by any specific defendants, other than by incorporating prior allegations. (*See generally id.* ¶¶ 92–97.) Count II is brought only against Dr. Smith. Counts III and IV are titled "Punitive Damages" and "Attorney Fees," respectively. They do not state separate legal claims, but only identify types of relief that Price seeks.

## II.  DISCUSSION

### A.  Legal Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.

### B.  The Correctional Defendants Are Defendants to Count I

In their motions to dismiss, defendants first contend that they are only named in Counts III and IV, which do not state claims, but only seek relief. Because they are not named as defendants to any legal claim, they argue that they should be dismissed. Plaintiff counters that the count refers to "all defendants" and that it was intended to state a claim against all defendants.

Defendants are correct that Counts III and IV are merely requests for relief and not legal

6

claims. The court agrees that the complaint could have been more clear as to which defendants Price was naming in Count I. In particular, although the count refers to "all defendants," it then goes on to specifically name only the medical defendants. Nonetheless, it does state it is against "all defendant." Thus, the court construes the complaint as asserting an Eighth Amendment deliberate indifference claim against all defendants, including the moving defendants, in Count I.

Defendants also assert that the complaint fails to include sufficient facts to state a claim against them. For the reasons discussed next, the court agrees. But because Price might be able to provide additional allegations sufficient to state a claim against these defendants, the dismissal will be without prejudice.

## C. Eighth Amendment Claim

### 1. Applicable Law

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To qualify as deliberate indifference, the defendant's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th

7

Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837; *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (explaining that deliberate indifference is "more than mere negligence," but "less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result" and that it is akin to subjective recklessness in criminal law).

Defendants do not argue that Price failed to satisfy the objective prong of an Eighth Amendment violation. Instead, they focus on the fact that Price had already received medical care at the time he asked to be taken to medical, and they emphasize that they are not medical personnel and were entitled to rely on medical personnel to properly treat his condition.

## 2. Eighth Amendment Claims Against Prison Officials

As noted in discussing the complaint's allegations, the only specific allegations against defendants Mick, Crookshanks, and Williams are that: (1) late the day of Price's injury, after he had been seen by the nurse and after he had submitted an emergency grievance and been told that he had an appointment first thing Monday morning, Price repeatedly asked these defendants to take him to medical and they all refused to take him to medical or even begin the process for him to be taken to medical. (Compl. ¶ 44); and (2) after Price had been moved to the medical department, he was called to the security booth where Mick told Price that he and Crookshanks "did not want to be held liable" and then Price "was told to go into the entryway to speak to Sergeant Williams," who "reiterated that they did not want to be held liable for Nicholas's knee injuries." (*Id.* ¶ 61.)

To be sure, there are numerous other allegations in the complaint asserting that unnamed "officers" took certain actions. But the Fourth Circuit has emphasized that collectively deeming "defendants" to have committed some act generally is insufficient to state a claim against any of

8

them individually. *Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023). In *Langford*, the Fourth Circuit agreed with courts who were "critical of complaints that fail to isolate the allegedly unconstitutional acts of each defendant, or that make only categorical references to defendants." 62 F.4th 125 (cleaned up). It explained that requiring specific factual allegations for each defendant "gives fair notice to *that* defendant of the plaintiff's claim and the underlying factual support." *Id.* (emphasis in original). This is particularly true in cases like this one and *Langford*, where an Eighth Amendment claim is being asserted, because that claim contains a subjective element that requires a prison official to have acted with a "sufficiently culpable state of mind." *Id.* at 124 (citations omitted). Thus, in ruling on defendants' motion to dismiss, the court considers only the two allegations that specifically mention these defendants, as set forth above.[5]

Notably, to bring a denial of medical treatment claim against a *non-medical* prison official, an inmate must show that the official was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was indifferent to the prison doctor's misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). Importantly, moreover, non-medical prison officials are entitled to rely on medical staff to make proper medical judgments; they "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002); *Miltier*, 896 F.2d at 854 (explaining that non-medical staff at a prison are entitled to rely on the opinion of medical staff as to whether the plaintiff needed additional medical care and/or testing). Further, a non-physician is not "deliberately indifferent simply

---

[5] The court does not determine at this time whether the claims against defendants would survive another motion to dismiss if they additionally were found to have engaged in some of the other actions attributed only to "officers."

9

because [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 539 (3d Cir. 2017).

Here, Price already had been seen by medical personnel in the late afternoon of March 6, but he complaints that the moving defendants then refused to take him to medical. Also, the complaint is not entirely clear as to timing, but it appears that, at the time the defendants refused to take him to medical, Price already had submitted an emergency medical grievance, and the nurse had responded that it was not an emergency and that he had a doctor's appointment the next business day. There are no facts in the complaint to support that any of these defendants subjectively knew that the nurses who had treated Price and responded to his grievance were wrong or providing inadequate treatment. Instead, these defendants were entitled to rely on the opinion of those nurses as to whether Price needed additional treatment or testing. *See Miltier*, 896 F.2d at 854.

Likewise, the statements these defendants were alleged to have made—*after* Price was moved to ACC's medical department—do not reflect deliberate indifference, nor are they an admission of guilt. The defendants told him that they did not want to be held liable for his injuries. They did not say that they were liable or should be held liable. Nor does Price specifically allege that it was these defendant who "made" him walk to meet them, or that he was under a doctor's orders prohibiting him from walking.

In short, the limited allegations against these non-medical defendants fail to state a claim of deliberate indifference under the Eighth Amendment.

## III.  CONCLUSION

For the reasons discussed above, the motions to dismiss (Dkt. Nos. 31, 40) will be granted, and defendants Williams, Crookshanks, and B. Mick will be dismissed without prejudice.  The court will also order that defendant Price be dismissed with prejudice and that R. Mick, to the extent he was intended to be a defendant, be dismissed without prejudice.

An appropriate order will be entered.

Entered: January 19, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge